Argued October 28, affirmed November 27, 1968

# STATE OF OREGON, *Respondent, v.* GEORGE COLSON, *Appellant.*

447 P. 2d 302

*J. Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause and flied the brief for appellant.

*Donald H. Turner,* District Attorney, The Dalles, argued the cause and filed the brief for respondent.

Before McALLISTER, Presiding Justice, and SLOAN, O'CONNELL, GOODWIN, DENECKE, HOLMAN and MENGLER, Justices.

MENGLER, J. (Pro Tempore).

The defendant was indicted for attempted burglary of a bulk oil plant, not being a dwelling. He pleaded

not guilty and was tried by a jury. A verdict of guilty was returned. He alleges as error the court's denial of his motion, at the close of the State's case, for a judgment of acquittal. Defendant offered no evidence. The State's evidence was entirely circumstantial.

■ The law is settled that the commission of a crime may be proved solely by circumstantial evidence. *State v. Dennis*, 177 Or 73, 159 P2d 838, 161 P2d 670 (1945). It is our role to determine whether there was substantial circumstantial evidence upon which a jury could properly return a verdict of guilty.

The evidence was that the bulk oil plant was located in a relatively isolated area. It was enclosed by a cyclone fence and on one side abutted, within 10 to 12 feet, a very steep rock bluff. The doors of the warehouse were equipped with a device which, if the doors of the warehouse were pried open, activated an alarm in the police station. At 1:25 a.m. on the date alleged, the alarm sounded in the police station. At 1:27 a.m. a policeman arrived at the plant.

The policeman testified as follows:

"A  I didn't see anything right at that instant. When I looked at the windows and looked across the platform I caught a motion of some type.
"*   *   *   *   *

"A  When I caught this motion going in an easterly direction I immediately proceeded—it would be to the northeast corner of this fenced enclosure.
"*   *   *   *   *

"A  *   *   * And right at the corner of the fence, which would be the southeast corner, I saw a motion of a man going into the brush.

"Q  You say you saw a motion of a man going into the brush; did you see a man going into the brush?
"A  Yes.

"Q  Was he running?

"A  Yes.

"Q  What did you do?

"A  I yelled for him to halt twice and then I said I would shoot and then I fired. I could tell he was still moving, I could hear the rustle of the leaves. This is very heavy foliage right in that area.

"*   *   *   *   *

"Q  You could hear somebody moving in the brush after you told them to stop?

"A  Yes.

"Q  Then you fired?

"A  Yes.

"Q  Then what did you do?

"A  I ran south to the gate—approximately to the gate, which is half way down to the fence. There I identified myself as a city police officer and told the subject to come out with his hands up or I would fire.

"*   *   *   *   *

"A  I advised the subject to come out with his hands up or I would fire again. And I could still hear the rustle of brush and movement within the brush so I fired once more.

"*   *   *   *   *

"A  *   *   * And we immediately proceeded in this area and the Sergeant was on my left and we entered the area with our flashlights and guns drawn and I walked directly to where this sound quit when I had last fired.

"Q  And did you find anything when you arrived there?

"A  Yes, I found the subject laying on his right side with his hands up near his head.

"Q  When you say the 'subject' you mean the defendant, Colson?

"A  Yes."

■ There was further testimony that the defendant was found between the fence and the bluff. The only access to this area was: (1) by crawling out of the enclosure over the fence; (2) jumping from the bluff; or (3) by coming along the outside of the fence. The warehouse doors were pried open. Wrenches which fit the pry marks were found near the doors. The wrenches were identified as belonging to the owner of the plant. They had been kept in a truck within the enclosure. A pair of leather gloves was found covered with leaves at the spot where the defendant was found. The right index and middle fingers of one of the gloves was cut off. The corresponding fingers of the defendant were missing. It had rained the night before. Footprints were found outside the enclosure leading toward the fence at a point where the fence drops off sharply. There were a few footprints inside the fence at a corresponding point. A footprint was found near some barrels stacked against the fence on the inside. These were the only footprints found. The footprints were about the same size as defendant's shoes. There were some smudges on the barrels which were in the same area where the policeman saw the man running into the brush.

We hold that there was sufficient substantial circumstantial evidence from which a jury could properly return a verdict of guilty.

Affirmed.